UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH C. LAMB,

v.                                    Case No. 8:04-cr-328-T-24MSS
                                              8:07-cv-1198-T-24MSS

UNITED STATES OF AMERICA.

_____

O R D E R

    This cause is before the Court on Defendant Kenneth C. Lamb's (Lamb's) motion

to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255

(Doc. cv-1; cr-96)(hereinafter "motion to vacate").  The United States filed a response in

opposition (Doc.Cv.-7) and Lamb filed a reply. (Doc.cv-11) A review of the pleadings and

the record demonstrates that, for the following reasons, Lamb's motion to vacate must be

**DENIED**.

BACKGROUND

    On August 3, 2004, Lamb was indicted on one count of felon in possession of a

firearm in violation of 18 U.S. C. §§922(g)(1) and 924(e).  Lamb  pled not guilty and

proceeded to trial.  On November 17, 2004, a jury found Lamb guilty of the charge. (Doc.cr-

48) .   On January 20, 2005, the Court sentenced Lamb to 200 months imprisonment.

Judgment was entered that same day.(Doc. Cr-67).

    Lamb filed a Notice of Appeal. On January 13, 2006, the United States Court of

Appeals for the Eleventh Circuit rejected Lopez's arguments and affirmed Lamb's

conviction and sentence. (Doc. cr-91).  On October 10, 2006, the United States Supreme

Court denied certiorari (Doc. Cr-92)

Lamb then filed his motion to vacate on July 9 2007.   Lamb's motion  to vacate is timely.

Lamb states one ground on which he claims he is entitled to relief.  He alleges  that he was denied effective assistance of counsel; specifically he states:

> Petitioner argues that trial counsel's personal bias towards him caused an impermissible conflict of interest in his case. As a result of this conflict, counsel failed to contest the credibility of the arresting deputy sheriff, and in fact bolstered his credibility during opening statements.  Counsel also chose an unreasonable trial strategy that did not require her to challenge the deputy's illegal search and seizure, where petitioner's only meritable defense was a fourth amendment challenge to his search and seizure.  Furthermore, petitioner specifically requested that counsel move for a suppression hearing.

(Doc. cv-1 at 5).

## Statement of Facts

On May 26, 2004, Lamb was stopped by Polk County Sheriff Rylott for "rolling through a stop sign." (Doc. Cr-78 at 121).  As the deputy approached the vehicle, Lamb appeared to be reaching for his front pants pocket, which concerned the deputy. (Id at 123). Lamb's continued nervousness prompted the deputy to ask Lamb if he could search the vehicle and Lamb himself. (Id.at 127). Lamb consented to the search and stepped out of the car. (Id.) The deputy searched Lamb and found a loaded .25 caliber pistol in his right front pants pocket. (Id.) Lamb claimed that he did not know whose pants he was wearing. (Id.) Lamb was arrested. (Id. At 133).  The pistol was later determined to be a Davis Industries Model D-25 caliber hand gun that was manufactured in California.(Id. 166-68 and 177).

Lamb had previously been convicted of a felony.

## Counsel's Trial Strategy

The defense theory was that even though there was a gun found in Lamb's pants pocket, he was not aware the gun was there and therefore had no intent to possess the gun. During opening statement,  Dionja Dyer conceded to the jury that Deputy Rylott found a gun in Lam's pants pocket.. (Id. At 114).  She called three witnesses to support the theory that Lamb didn't know the gun was in his pants pocket.  Deputy Baker testified that Lamb had admitted to her that he was taking Xanax. (Id. At 183)  Robert Kline, a passenger in the vehicle, testified when the police stopped the vehicle, Lamb threw him a crack pipe but at no time mentioned or tried to get rid of a gun. (Id. 190). Michael Booker, a friend, testified that he had never seen Lamb with a gun before, and that Lamb was on his way to pick up a transmission for a car when he was arrested. (Id. At 195). At closing, Dyer argued that Lamb was so high on cocaine and Xanax, that he was unaware of the gun in his pants pocket. This also explained his consenting to a search.

Counsel's second defense argument challenged the interstate commerce nexus as it related to the gun.  Counsel argued that the prosecution failed to prove the gun had traveled in interstate commerce.


Standard for Effective Assistance of Counsel

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on

the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690.  Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v.*

4

*Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

Lamb's claim that his counsel was ineffective has no merit.

## DISCUSSION

Lamb argues that Dionja Dyer (Dyer), his counsel, had a bias towards him based on his complaining about her to her supervisor. He claims that bias caused a conflict of interest. In addition, Lamb complains that Dyer did not perform any meaningful pretrial discovery causing her to be unprepared at trial, failed to file a motion to suppress or in any other way attack the legality of the search and seizure and chose an unreasonable trial strategy.

### Conflict of interest

Lamb was actually represented in his case, at very stages,  by three attorneys from the federal public defender's office–Dionja Dyer, Mark Rankin who assisted at trial, and Adam Allen who handled the sentencing. Lamb never complained about his representation until after he was convicted. On November 19, 2004, two days after the jury verdict, Lamb filed a motion to appoint new counsel. The Court held a hearing on the motion at which time Lamb voiced many of the same complaints contained in this §2255 petition. The Court offered to grant Lamb's motion and appoint new counsel for sentencing and appeal. However, at the end of the hearing, Lamb changed his mind and said that he wanted to stick with his attorneys and did not want new counsel appointed.(Cr-79).  The record does not substantiate Lamb's claims of bias or that his attorney suffered from a conflict of interest.  In addition, should there have been a conflict, Lamb clearly waived it when he chose to keep his counsel for sentencing and appeal rather than having new counsel appointed.

Failure to Challenge the Legality of the Search

Lamb argues that Dyer failed to challenge the legality of the search and seizure by filing a motion to suppress prior to trial or by contesting the credibility of Deputy Rylott at trial.  Specifically Lamb argues that he never consented to the search and that he did not possess the gun.

Deputy Rylott testified at trial to the circumstances surrounding the traffic stop and to the facts regarding the search.  Nothing in the trial testimony of Deputy Rylott or the testimony of any of the other witness refute the legality of the traffic stop or the fact that Lamb consented to the search.  Lamb offers no evidence other than his self-serving statement to support his contention that he did not consent to the search. There is no reason to believe that had Dyer filed a motion to suppress, it would have been successful. Lamb has not shown that he was prejudiced by Dyer's failure to file a motion to suppress.

Unreasonable Trial Strategy

There is no merit to Lamb's argument that his counsel pursued an unreasonable trial strategy.  Dyer chose to argue that Lamb never "intentionally" possessed the firearm. Since the firearm was found in Lamb's pants pocket, and Lamb consented to the search, a trial strategy which contested Lamb's intent was not unreasonable, and perhaps the only trial strategy available.

Accordingly, the Court orders:

That Lamb's motion to vacate (Doc. cv-1; cr-96) is denied, with prejudice.  The Clerk is directed to enter judgment against Lamb  in the civil case and to close that case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Lamb is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue     only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Lamb has not made the requisite showing in these circumstances.

Finally, because Lamb is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, December 21, 2007.

SUSAN C. BUCKLEW
United States District Judge